UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6264-CR-FERGUSON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DAVID DEBERNARDIS,

Defendant.

_____/

**NIGHT BOX**
**· FILED ~ ··**

AR 1 ſ 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

The Defendant, DAVID DEBERNARDIS, through undersigned counsel, respectfully moves for a downward departure from the otherwise applicable guideline offense level for the following reasons taken individually or in the aggregate, and in support thereof, the defendant states:

### Extraordinary Family Circumstances and Responsibilities

While the Sentencing Guidelines provide that family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, see U.S.S.G. § 5H1.6 p.s., district courts may depart downward from the applicable guideline range upon a showing of extraordinary circumstances. See United States v. Allen, 87 F.3d 1224 (11th Cir. 1996); United States v. Cacho, 951 F.2d 308, 311 (11th Cir. 1992). A downward departure is warranted in this case.

Mr. Debernardis was arrested for the instant offense on September 15, 2000. On September 17, 2000, while Mr. Debernardis was awaiting his bond hearing, his wife, Sandra, suffered a fatal

accident. While doing work on their boat, Ms. Debernardis slipped off the dock into the water. When help arrived, Ms. Debernardis was laying unconscious in the water, pinned between the boat and the dock. She never regained consciousness and died a few days later in the hospital. See Pre-sentence Investigation Report (PSI), Monroe County Sheriff Report, hereto attached as defendant's exhibit 1. Mr. Debernardis blames himself for his wife's death and continues to grieve. He is currently receiving psychiatric treatment from Sue Leuschke, M.D., and has been prescribed medication for depression. See PSI ¶ 56. In addition to the recent loss of his wife, Mr. Debernardis' father passed away in April, 2000.

Mr. Debernardis is the sole care taker of his brother, Franklin Debernardis, who suffers from Down's syndrome, a congenital condition characterized by varying degrees of mental retardation. See PSI ¶ 49. Franklin is in need of constant care and monitoring, and is totally dependent upon Mr. Debernardis. There are no other relatives who can take care of Franklin if Mr. Debernardis is incarcerated.

In United States v. Gaskill, 991 F.2d 82, 86 (3d. Cir. 1993), the Third Circuit Court of Appeals held that a district court had discretion to depart from the guidelines range on the ground that the defendant was solely responsible for care of his mentally ill spouse. Similarly, in United States v. Haversat, 22 F.3d 790, (8th Cir. 1994), the court held that a downward departure was appropriate due to the severe psychiatric problems of the defendant's wife.

Mr. Debernardis submits that the recent death of his wife and the responsibility of caring for his mentally ill brother are extraordinary circumstances which allow this Court to exercise its discretion to impose a sentence below the otherwise applicable guideline range.

2

## Prior Good Works and Community Ties

Although civic, charitable, public service, and similar prior good works are not ordinarily relevant in determining whether a defendant should receive a downward departure, a district court may consider these factors in extraordinary cases. See USSG §§ 5H1.6, 5H1.11, 5K2.0; United States v. Wilke, 156 F.3d 749 (7th Cir. 1998); United States v. Crouse, 145 F.3d 786 (6th Cir. 1998); United States v. Rioux, 97 F.3d 648 (2d Cir 1996).

Since returning to Monroe County in 1994, Mr. Debernardis has been an unselfish and tireless contributor to the community. Mr. Debernardis is an active participant in the Key Largo Crime Watch Program and is involved in the United States Coast Guard Auxiliary. In addition, Mr. Debernardis founded Upper Keys Volunteer Search and Rescue. Attached as defendant's exhibits 2 through 11 are letters from members of the Key Largo community( including law enforcement officers), newspaper articles, and other documents verifying Mr. Debernardis' community service and volunteer activities. These exhibits show the extraordinary nature of Mr. Debernardis' civic involvement. This Court may rely upon these exhibits to impose a sentence below the otherwise applicable guideline range. See United States v. Jones, 158 F.3d 492, 500 (10th Cir. 1998) ( District Court did not abuse discretion by aggregating defendant's long history of community service with other factors in support of downward departure); United States v. Big Crow, 898 F.2d 1326, 1332 (8th Cir. 1990)(District Court did not abuse discretion when decision to downward depart was partly based on defendant's solid community ties established by letters written by community members).

Accordingly, Mr. Debernardis respectfully requests this Court to consider his prior good works and community service as factors in determining whether Mr. Debernardis should receive a sentence below the guideline range.

#### Defendant's Mental and Physical Condition

Mr. Debernardis is an epileptic from birth and experiences frequent and severe seizures. See PSI ¶ 55. As a result of the epilepsy, Mr. Debernardis is unable to work and receives disability checks from Social Security. He also suffers from a heart condition and high blood pressure. In addition to his physical problems, Mr. Debernardis is presently mentally impaired. He suffers from depression and his being treated by Sue Leuschke, M.D. See PSI ¶ 56.

Mr. Debernardis was recently examined by licensed psychologist Leonard Haber, Ph.D., pursuant to a court order. Dr. Haber concluded that Mr. Debernardis is mentally distraught and needs continued psychiatric treatment and supervision. Dr. Haber's report is attached as defendant's exhibit 12. Mr. Debernardis is requesting that the Court consider his mental and physical condition as grounds for imposing a sentence below the guideline range.

#### Lesser Harms

Mr. Debernardis proffers that he was attempting to purchase the firearm as a gift for his wife. Mr. Debernardis submits that his reason for purchasing the firearm permits this Court to downward depart pursuant to USSG § 5K2.11 p.s. This section permits a reduced sentence if the defendant's conduct did not cause the harm sought to be prevented by the law proscribing the conduct See United States v. Clark, 128 F.3d 122, 124 (2d Cir. 1997).

In Clark, the defendant was convicted of possession of a firearm by a convicted felon. 128 F.3d at 123. At the sentencing hearing, the defendant argued for a "lesser harms" downward departure pursuant to USSG § 5K2.11 because he had purchased the gun as a Christmas gift for his brother. Id. The government argued that a "lesser harms" downward departure was inapplicable because the defendant had not possess the gun to avoid a greater harm. Id. The district court adopted

4

the reasons set forth by the government and denied the defendant's motion for downward departure. Id.

The Second Circuit found that the government incorrectly advised the district court of the scope of section 5K2.11 and remanded the case for further consideration. Id. at 124. The Clark court reasoned that section 5K2.11 permits a departure where the conduct may not cause or threaten the harm to or evil sought to be prevented. Id. The Clark court further reasoned that whether a departure was permitted depended on whether the district court credited the defendant's claim and whether section 5K2.11 was applicable to the factual circumstances existing at the time of the purchase. Id. The Clark court went on to sate that the application of the section may depend on the length of time the defendant intended to possess the gun prior to delivering it to his brother. Id.

In this case, Mr. Debernardis proffers that it was his intention to give the gun to his wife immediately after the purchase. Mr. Debernardis submits that his contemplated brief possession of the firearm is not the harm sought to be prevented by 18 U.S C § 922(a)(6). Therefore, this Court should consider this as a factor upon which to grant a downward departure.

## Conclusion

In sum, this Court is specifically directed to "impose a sentence sufficient, but not greater than necessary," to fulfill the goals of 18 U.S.C. § 3553(a). Mr. Debernardis, despite his significant criminal history, has made tremendous strides and has become a responsible and valuable member of the community in which he resides. Even more unusual is that Mr. Debernardis has made this turn around while suffering from a disabling mental condition. Mercy is therefore respectfully requested here. Mr. Debernardis prays that this Court will grant his Motion for Downward Departure

and impose a sentence which is consistent with the facts and arguments set forth above.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By:

Daryl E. Wilcox
Assistant Federal Public Defender
Attorney for Defendant
Florida Bar No. 571962
101 N.E. Third Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436 / 356-7556 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument was mailed and faxed this 16th

day of March, 2001 to Dana Washington, Assistant United States Attorney, 500 E. Broward

Boulevard, 7th Floor, Fort Lauderdale, Florida, 33394; and Paul J. Cresce, United States Probation

Officer, 301 Simonton Street, Room 230, Key West, FL 33040-6812.

Daryl E. Wilcox

**OFFENSE-INCIDENT REPORT**

| | |
|---|---|
| 1 Original | 2 Supplement |

**ATOM**

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| FLO 4 4 0 0 0 | OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA | O 3 1 4 3 6 8 |

| Original Day Reported | Date | Time (mil) | Time Dispatched (mil) | Time Arrived (mil) | Time Completed (mil) |
|---|---|---|---|---|---|
| SUN | 0 9 1 7 0 0 1 | 2 0 6 | 1206 | 1 2 0 8 | 1 4 3 5 |

| Incident Type | | | | Incident Day | Date | Time (mil) | Day | Date | Time (mil) |
|---|---|---|---|---|---|---|---|---|---|
| 1. Felony  3. Misdemeanor  5. Ordinance | | | | From | | | To | | |
| 2. Traffic Felony  4. Traffic Misdemeanor  9. Other | | | | | | | | | |

| OFF/INC | Type | Description | | | Status Violation Number | | NCIC/UCR Code |
|---|---|---|---|---|---|---|---|
| #1 | 9 | NEAR DROWNING / MED CALL | A-Attempted  C-Committed | I C | 4 9 1 | | |

**#2**

**EVENT DATA**

| Incident Location (Street, Apt. Number) | City | | Zip | District | Grid | Shift | Zone |
|---|---|---|---|---|---|---|---|
| 1005 HIALEAH LN | KEY LARGO FL | | 33037 | 0 3 | 4 3 0 0 | 1 | 0 3 |

| Business Name/Area Identifier | Forced Entry | Occupancy |
|---|---|---|
| GROSS KEY, WATERWAY'S 103MM- BAY | O-N/A  N-No  Y-Yes | 0 N/A  1 Occupied  2 Unoccupied  3 Abandoned |

Location Type:
01 Residence-Single  05 Convenience Store  09 Supermarket  13 Bank/Financial Inst.  17 Gov't/Public Bldg  21 Airport  25 Parking Lot/Garage  29 Motor Vehicle
02 Apartment/Condo  06 Gas Station  10 Dept/Discount Store  14 Commercial/Office Bldg  18 School/University  22 Bus/Rail Terminal  26 Highway/Roadway  30 Other Mobile
03 Residence-Other  07 Liquor Sales  11 Specialty Store  15 Industrial/Mfg  19 Jail/Prison  23 Construction Site  27 Park/Woodlands/Field  99 Other
04 Hotel/Motel  08 Bar/Nightclub  12 Drug Store/Hospital  16 Storage  20 Religious Bldg.  24 Other Structure  28 Lake Waterway | | | | | | | 0 3 1 |

| #OFF/INC | # Victims | # Offenders | # Prem. Ent. | # Veh Stolen | Type Weapon | Unit | |
|---|---|---|---|---|---|---|---|
| 0 1 | 0 1 | 0 0 | 0 0 | 0 0 | 00 N/A  02 Rifle  05 Knife/Cutting Instrument  07 Hands/Fists/Feet  10 Fire/Incendiary  13 Drugs | | 0 0 |
| | | | | | 01. Handgun  03 Shotgun  06. Blunt Object  08 Poison  11 Threat/Intimidation  88 Unknown | | |
| | | | | | 04. Firearm  09. Explosives  12 Simulated Weapon  99 Other | | |

**CORPS**

| Activity | | Type | | Unit |
|---|---|---|---|---|
| P. Possess  D. Deliver  U. Unknown | A. Amphetamine  M. Marijuana  U. Unknown | 1. Gram  6. Ton | | |
| S. Sell  E. Use  Z. Other | B. Barbiturate  O. Opium/Derivative  Z. Other | 2. Milligram  7. Liter | | |
| B. Buy  K. Dispense/Distribute | C. Cocaine  P. Paraphernalia/ | 3. Kilogram  8. Milliliter | | |
| T. Traffic  M. Manufacture/Produce/  Cultivate | E. Heroin  Equipment | 4. Ounce  9. Dose Unit/Item | | |
| R. Smuggle | H. Hallucinogen  S. Synthetic | 5. Pound | | |

**DRUGS**

| Activity | Type | Description | | Quantity | Unit | Estimated Street Value |
|---|---|---|---|---|---|---|
| | | | | | | $ 00 |
| | | | | | | $ 00 |
| | | | | | | $ 00 |

**CODES**

| V/W Code | Victim Type | Race | Sex | Residence Type | Residence | Extent of Injury |
|---|---|---|---|---|---|---|
| V-Victim  P-Proprietor | 0. N/A  4. Business | 0. N/A  I-American Indian | N-N/A | 0. N/A  3. Florida | O N/A | N None |
| W-Witness  X-Other | 1. Juvenile  5. Government | W-White  O-Oriental/Asian | M-Male | 1. City  4. Out-of-State | F Full Year | M Minor |
| C-Reporting Person | 2. L.E. Officer  6. Church | B-Black  U-Unknown | F-Female | 2. County | P Part Year | S Serious |
| | 3. Adult  9. Other | | U-Unknown | | N Non-Resident | F Fatal |

| Injury Type | Victim Relationship To Offender | | | |
|---|---|---|---|---|
| 00 N/A  03 Laceration  07 Loss of Teeth | A-Parent  G-Boy/Girl Friend  L-Stranger  P-Step-Child  T-Child/Boy-Girl Friend  W-Employer | | | |
| 01 Gunshot  04 Unconscious  08 Burns | B-Sibling  H-Friend  M-Underlement  Q-Other Family  U-Neighbor  X-Acquaintance | | | |
| 02 Stabbed  05 Poss. Broken Bones  09 Abrasions/Bruises | C-Spouse  I-Employee  J-Employee  N-Ex-Spouse  R-Step-Parent  V-Sweet/Day Care  Y-Other Unknown | | | |
| 06. Poss. Internal Injury  99 Other | C-Child  K-Landlord/Tenant  S-Teacher  Worker  Z-N/A | | | |

**VICTIM/WITNESS**

| OFF/INC Indicator | V/W Code | # | V. Type | Name (Last, First, Middle or Business) | | | Residence Phone |
|---|---|---|---|---|---|---|---|
| 1 #1  3. Both  2. #2 | V | | 3 | DE BERNARDIS, THEGA RAE | | | (305) 451-3347 |

| Address (Street, Apt. No.) | City | State | Zip | Business Phone |
|---|---|---|---|---|
| 1005 HIALEAH LN | KEY LARGO FL | | 33037 | |

| Other Contact Info (Time Available, Interpreter, etc.) | Synopsis of Involvement |
|---|---|
| | VICTIM OF NEAR DROWNING |

| If V/W Code | Race | Sex | Date of Birth or Age | Res. Type | Extent of Injury | Injury Type(s) | Relationship | Will victim prefer charges? |
|---|---|---|---|---|---|---|---|---|
| V, W, C, or P | W | F | 0 4 0 6 5 0 2 | F | S | 9 9 | Z | Yes ☐ No ☐ |

| OFF/INC Indicator | V/W Code | # | V. Type | Name (Last, First, Middle or Business) | | | Residence Phone |
|---|---|---|---|---|---|---|---|
| 1 #1  3. Both  2. #2 | W | | 3 | DE BERNARDIS, FRANKLIN JR | | | (305) 451-3347 |

| Address (Street, Apt. No.) | City | State | Zip | Business Phone |
|---|---|---|---|---|
| 1005 HIALEAH LN | KEY LARGO FL | | 33037 | |

| Other Contact Info (Time Available, Interpreter, etc.) | Synopsis of Involvement |
|---|---|
| | BROTHER IN LAW TO VICTIM — WITNESS TO INCIDENT |

| If V/W Code | Race | Sex | Date of Birth or Age | Res. Type | Extent of Injury | Injury Type(s) | Relationship | Will victim prefer charges? |
|---|---|---|---|---|---|---|---|---|
| V, W, C, or P | W | M | 0 2 1 0 5 0 2 | F | N | 0 0 | E | Yes ☐ No ☐ |

**SUSPECT**

| OFF/INC Indicator | Suspect Code | Code | # | Juvenile | Name (Last, First, Middle) | Nickname/AKA | Number Arrested | In-Book # |
|---|---|---|---|---|---|---|---|---|
| 1 #1  3. Both  2. #2 | S-Suspect  E-Escapee  A-Arrestee  Z Other | | | | | | | |

| Last Known Address (Street, Apt. Number) | City | State | Zip | Residence Phone |
|---|---|---|---|---|
| | | | | |

| OFF/INC Indicator | Sex | Date of Birth or Age | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style | Texture |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| Complexion | Build | Glasses | Facial Hair | Teeth | Speech/Voice | Clothing | Appearance | Physical Cond. | Scars/Marks/Tattoos (Location/Describe) | Hand Use |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | ☐ Left  ☐ Right  ☐ Unknown |

**SUSPECT OR MISSING PERSON**

| OFF/INC Indicator | Suspect Code  B-Missing/Recovered | Code | # | Juvenile | Name (Last, First, Middle) | Nickname/AKA | In-Book # |
|---|---|---|---|---|---|---|---|
| 1 #1  3. Both  2. #2 | S-Suspect  E-Escapee  R-Recovered  Z-Other  A-Arrestee  M-Missing  Missing | | | | | | |

| Last Known Address (Street, Apt. Number) | City | State | Zip | Residence Phone |
|---|---|---|---|---|
| | | | | |

| Name | Sex | Date of Birth or Age | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style | Texture |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| Complexion | Build | Glasses | Facial Hair | Teeth | Speech/Voice | Clothing | Appearance | Physical Cond. | Scars/Marks/Tattoos (Location/Describe) | Hand Use |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | ☐ Left  ☐ Right  ☐ Unknown |

**COMPLEXION**
ALB - Albino
BLK - Black
DBN - Dk Brown
DRK - Dark
FAR - Fair
LBR - Lt Brown
LGT - Light
MBR - Med Brown
MED - Medium
OLV - Olive
RUD - Ruddy
SAL - Sallow
YEL - Yellow

**BUILD**
A Heavy/Fat
B Medium
C Thin
D Muscular
X Other (specify)
Y Not Applicable
Z Unknown

**GLASSES**
A No Glasses
B Plastic Frames
C Wire Frames
D Rimless
E Sunglasses
F Tinted Lenses
X Other (specify in narrative)
Y Not Applicable
Z Unknown

**FACIAL HAIR**
A Clean Shaven
B Unshaven
C Heavy Beard
D Sideburns
E Fuzzy
F Mustache
G Fu Manchu
H Lower Lip Hair
I Goatee
J Thin Beard
K Full Beard
X Other (specify in narrative)
Y Not applicable
Z Unknown

**TEETH**
A Broken/Chipped
B Missing
C None
D False/Dentures
E Braces
F Gapped
G Irregular
H Protruding
I Stained/Decayed
J Gold
K Silver
X Other (specify in narrative)
Y Not Applicable
Z Unknown

**SPEECH**
A Accent
B Lisp
C Slurred
D Stuttered
E Nasal
O Effeminate
Q Rapid
H Slow
I Pleasant
J Talkative
K Quiet
L Said Nothing/Motioned
M Profane
N Broken
X Other (specify in narrative)
Y Not Applicable
Z Unknown

**HAIR TEXTURE**
A Course
B Fine
C Shaved
D Thick
E Thinning
F Wavy
G Kinky
X Other (specify in narrative)
Y Not Applicable
Z Unknown

**CLOTHING**
A Baseball Cap
B Watch Cap
C Other Cap
D Cowboy Hat
E Other Hat
F Headband/Scarf
G Ski Mask
H Stocking Mask
I Earrings/Jewelry
J Shirt/Blouse
K Shorts
L Pants
M Skirt

**APPEARANCE**
A Conservative
B Dirty
C Disguise
D Flashy
E Military
F Unkept

**DRESS**
N Dress
O Sweater
P Jacket
Q Coat
R Uniform
S Coveralls
T Suit
U Bathing Suit
V Gloves
W Boot/Shoes/Footwear
X Other (specify in narrative)
Y Not Applicable
Z Unknown
G Unusual Odor
H Well Groomed
I Work Clothes
X Other (specify in narrative)
Y Not Applicable
Z Unknown

**HAIR STYLE**
A Afro/Natural
B Braided
C Bushy
D Crew Cut
E Shoulder
F Military
G Ponytail
Z Not Applicable

DEFENDANT'S EXHIBIT 1

OPS-001-R99


| | Agency ORI Number | 6 Disaster | Agency Name | | | | | Agency Report Number | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FLO | 4 4 0 0 0 0 | | OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA | | | | | 0 0 3 7 4 3 6 8 | | | |

**ADM**

| Incident Type | Foul Play Suspected? | Missing Before? | Fingerprints Available? | Photo Available? | Dental Record Available? | MCIC Form Provided? |
|---|---|---|---|---|---|---|
| 1 Runaway    6 Disaster<br>2 Parental    7 Voluntary<br>3 Involuntary   Adult<br>4 Disabled    8 Unknown<br>5 Endangered | Y - Yes<br>N - No | Y - Yes<br>N - No<br>U - Unknown | Y - Yes<br>N - No<br>U - Unknown | Y - Yes<br>N - No<br>U - Unknown | Y - Yes<br>N - No<br>U - Unknown | Y - Yes<br>N - No |

| Date Last Seen | Time Last Seen | Location Last Seen (Address, City St) | Accompanied By |
|---|---|---|---|

**MISSING PERSON/RUNAWAY**

Mental/Physical Condition

Medication Required/Type

Doctor/Dentist (Name, Phone Number)

Property Carried

ID Type/Number

ID Type/Number

Probable Destination

Name/Address

Transportation Mode

| Recovery Information | | | | | |
|---|---|---|---|---|---|
| 0 N/A<br>1 Voluntary | 2 Located<br>Not Returned | 3 Hospitalized<br>4 HRS Custody | 5 Law Enforcement Custody<br>6 Returned to Parent | 7 Deceased<br>9 Other | |

**CODES**

| Person Code | Status Code | Damage Code | Type | Recovery Location | Recovery Code Stolen / Recovered |
|---|---|---|---|---|---|
| V Victim    E Escapee<br>S Suspect   R Recovered<br>M Missing    Z Other<br>A Arrestee | 1 Stolen    5 Impounded<br>2 Recovered   6 Abandoned<br>3 Stolen and   7 Fail Return<br>  Recovered   8 Seized<br>4 Suspicious  9 Other | 0 N/A    4 Stripped/Theft<br>1 Arson    From<br>2 Criminal Mischief  9 Other<br>3 During Other<br>  Offense | 1 Auto    6 Trailer<br>2 Truck/Van   7 Boat<br>3 Motorcycle  8 Aircraft<br>4 Camper/RV   9 Other<br>5 Bus | 1 Family Residence   5 Park/Playground<br>2 Apt. Complex   6 Shopping Mall<br>3 Housing Project  7 Woods<br>4 Commercial   8 Water<br>  Industrial   9 Other | 1 Local / Local<br>2 Local / Other<br>3 Other / Local |

**VEHICLE/VESSEL**

| Person Code # | Veh # | Status | Damage | Type | Year | Make | Model | Style |
|---|---|---|---|---|---|---|---|---|
| V | 01 | 9 | | 7 | 1957 | KENNEN | | |

| Tag Reg/Doc # | Reg State | Reg Year | Decal Number | Tag Type |
|---|---|---|---|---|
| FL 5890HK | FL | 01 | 0037487 | |

| VIN/Hull # | Estimated Value |
|---|---|
| RBMUU203C787 | $ |

| Condition | Insurance Company | Lien Holder |
|---|---|---|
| 1 Window Closed    J Keys in Ignition<br>2 Locked | | |

| Color (Top/Bottom) | Description (Identifying Characteristics, Noticeable Damage, Interior Color, etc.) |
|---|---|
| WHITE | CABIN CRUISER |

| Vessel Name | Length | Hull Material | Propulsion | Boat Type |
|---|---|---|---|---|
| | 22'00" | | | |

| Recovery Address/Geographic Indicator | Date Recovered | Value Recovered |
|---|---|---|
| | | $ |

| Recovery Loc. | Recovery Code | Original Reporting Agency | Report Number | Hold Y Yes N No | Reason/Authority |
|---|---|---|---|---|---|

| Method of Theft | Components Stripped | | |
|---|---|---|---|
| 0 N/A    2 Tow Truck  4 Steering<br>1 Keys   3 Hot Wire | 5 Ignition Punch<br>8 Unknown | 0 N/A    2 Tires/Wheels  4 Battery<br>1 VIN Plate   3 Radio/CB<br>5 Interior | 6 Transmission  8 Major Body Parts<br>7 Engine Parts  9 Tab/Decal Stolen | 10 Other Specify |

| Towed By | Storage Location | FCIC/NCIC | Location of Original Theft | Vehicle Acquisition # |
|---|---|---|---|---|

**THEFT**

| Type of Theft | | | | | |
|---|---|---|---|---|---|
| 00 N/A    07 Robbery<br>01 Burglary   03 Shoplifting | 04 Pocket Picking<br>05 Purse Snatching | 06 Embezzlement<br>07 From Coin Oper. Machine | 08 From Public<br>Access Bldg. | 09 From Vehicle<br>10 Extortion | 11 By Computer<br>12 Fraud    99 Other  0 0 |

**CODES**

| Person Code | Status Code | Damage Code |
|---|---|---|
| V Victim    P Proprietor<br>A Arrestee<br>S Suspect   Z Other | 1 Stolen   3 Stolen and Recovered  5 Lost   8 Evidence/Seized<br>4 Recovered for Other  6 Found   9 Other<br>  Jurisdiction   7 Safekeeping | 0 N/A   2 Criminal Mischief<br>1 Arson   3 During other Offense<br>   9 Other |

| Property Type | | | | |
|---|---|---|---|---|
| A Auto Accessory/Parts<br>B Bicycle<br>C Camera/Photo Equipment<br>D Drug<br>E Equipment/Tool | F Food/Liquor/Consumable<br>G Gun<br>H Household Appliance/Goods<br>I Plant/Citrus<br>J Jewelry/Precious Metal | K Clothing/Fur<br>L Livestock<br>M Musical Instrument<br>N Construction Machinery<br>O Office Equipment | P Art/Collection<br>Q Computer Equipment<br>R Radio/Stereo<br>S Sports Equipment<br>T TV/Video/VCR | U Currency-Negotiable<br>V Credit Card/Non-Negotiable<br>W Boat Motor<br>X Structure<br>Y Farm Equipment   Z Miscellaneous |

**PROPERTY**

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|

| Serial Number | Owner Applied Number | Description (Size, Color, Caliber, Barrel Length, etc.) | Property Receipt # |
|---|---|---|---|

| Value | Value Recovered | Date Recovered | FCIC/NCIC |
|---|---|---|---|
| $      0  0 | $      0  0 | | |

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|

| Serial Number | Owner Applied Number | Description (Size, Color, Caliber, Barrel Length, etc.) | Property Receipt # |
|---|---|---|---|

| Value | Value Recovered | Date Recovered | FCIC/NCIC |
|---|---|---|---|
| $      0  0 | $      0  0 | | |

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|

| Serial Number | Owner Applied Number | Description (Size, Color, Caliber, Barrel Length, etc.) | Property Receipt # |
|---|---|---|---|

| Value | Value Recovered | Date Recovered | FCIC/NCIC |
|---|---|---|---|
| $      0  0 | $      0  0 | | |

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|

| Serial Number | Owner Applied Number | Description (Size, Color, Caliber, Barrel Length, etc.) | Property Receipt # |
|---|---|---|---|

| Value | Value Recovered | Date Recovered | FCIC/NCIC |
|---|---|---|---|
| $      0  0 | $      0  0 | | |

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|

| Serial Number | Owner Applied Number | Description (Size, Color, Caliber, Barrel Length, etc.) | Property Receipt # |
|---|---|---|---|

| Value | Value Recovered | Date Recovered | FCIC/NCIC |
|---|---|---|---|
| $      0  0 | $      0  0 | | |

**DOCUMENT**

| Vic # | Wit # | Susp # | Doc # | Status | Type | Bank/Card Issuer | Account Number | Document/Serial No. |
|---|---|---|---|---|---|---|---|---|

| Printed Name | Payable To | Face Signature |
|---|---|---|

| Endorsement | Other Name(s) | Service/Property Received |
|---|---|---|

| ID Type | ID Number | Document Date | Amount |
|---|---|---|---|
| | | | $      0  0 |

**Agency Report Number** · **Agency Name** OFFICE OF THE SHERIFF MONROE COUNTY, FL

### TYPE OF PREMISE
( ) A. Fast Food
( ) B. Restaurant
( ) C. Bar / Lounge / Liquor Store
( ) D. Grocery
( ) E. Convenience
( ) F. Retail Sales / Service
( ) G. Gas Station
( ) H. Drug / Medical
( ) I. Entertainment / Recreation
( ) J. Financial Institution
( ) K. Public Building
( ) L. Church
( ) M. Office
( ) N. Manufacture
( ) O. Construction
( ) P. Single Family Dwelling
( ) Q. House Trailer
( ) R. Apartment / Condominium
( ) S. Duplex / Townhouse
( ) T. Motel / Hotel
( ) U. Van / Camper / Motor Home
( ) V. Boat / Houseboat
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### PLACE OF ATTACK
( ) A. Residence
( ) B. Business
( ) C. Other Structure
( ) D. Vehicle
( ) E. Boat
( ) F. Highway
( ) G. Street / Alley
( ) H. Lot / Park / Yard
( ) I. Undeveloped Area / Open Space
( ) J. Beach
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### OBJECT OF ATTACK
( ) A. No Force Used
( ) B. Left Unlocked
( ) C. Safe / Box
( ) D. Cash Register / Drawer
( ) E. Owner/Employee
( ) F. Customer
( ) G. Display Items
( ) H. Vending machine
( ) I. Storage Area
( ) J. Living Room
( ) K. Family Room / Den
( ) L. Dining Room
( ) M. Kitchen
( ) N. Bedroom
( ) O. Bathroom
( ) P. Garage / Carport
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### POINT OF ENTRY
( ) A. Front
( ) B. Side
( ) C. Rear
( ) D. Ground Level
( ) E. Upper Level
( ) F. Adjoining Building
( ) G. Door
( ) H. Sliding Glass Door
( ) I. Window
( ) J. Floor
( ) K. Wall
( ) L. Roof
( ) M. Duct / Vent
( ) N. Garage
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### POINT OF EXIT

N/A

### METHOD OF ENTRY
( ) 01. Threatened Vict Harm
( ) 02. Choked Vict
( ) 03. Hit / Beat Vict
( ) 04. Bit Vict
( ) 05. Cut / Stabbed Vict
( ) 06. Shot Vict
( ) 07. Kidnapped Vict
( ) 08. Covered Vict Face
( ) 09. Bound / Gagged Vict
( ) 10. Tied/Handcuffed Vict
( ) 11. Covered Vict Mouth w / Hand
( ) 12. Jumped Vict from Behind
( ) 13. Made Purchase
( ) 14. Grabbed and Ran
( ) 15. Took Money / Cash Drawer
( ) 16. Required Keys / Combination
( ) 17. Forced Vict Open Register
( ) 18. Forced Vict Open Safe
( ) 19. Forced Vict Bag Money
( ) 20. Used Note
( ) 21. Hid / Masked Face
( ) 22. Jumped Counter
( ) 23. Knew Alarm System
( ) 24. Had Knowledge of Safe
( ) 25. Made Unique Statement
( ) 26. Told Vict to Raise Hands
( ) 27. Told Vict to Lay on Floor
( ) 28. Told Vict to Go to Rear
( ) 29. Told Vict to Count
( ) 30. Susp Looking for Work
( ) 31. Susp Asked for Assistance
( ) 32. Susp Offer Assistance
( ) 33. Made Suspicious Phone Call
( ) 34. Answered Vict Ad

### METHOD OR ATTACK ON PERSON
( ) 35. Vict Hitchhiking
( ) 36. Susp Hitchhiking
( ) 37. Met Vict in Bar
( ) 38. Lured Vict to Isolated Area
( ) 39. Susp Hid in Building
( ) 40. Susp Waited at Structure
( ) 41. Susp Used Stolen Vehicle
( ) 42. Susp Used Vict Vehicle
( ) 43. Susp Posed as Salesman
( ) 44. Posed Officer / Security Guard
( ) 45. Posed as Bank Exam / Officer
( ) 46. Pigeon Drop
( ) 47. Three-Card Monte
( ) 48. Jamaican Switch
( ) 49. Delicated at Scene
( ) 50. Urinated at Scene
( ) 51. Raped Vict
( ) 52. Used Lubricant
( ) 53. Kissed Vict
( ) 54. Touched Vict Breast
( ) 55. Touched Genitals
( ) 56. Vict Masturbated Susp
( ) 57. Forced Vict Fondle Susp
( ) 58. Orally Copulated Vict
( ) 59. Sodomized Vict
( ) 60. Susp Climaxed Immediately
( ) 61. Susp Unable Achieve Erection
( ) 62. Remained Clothed During Act
( ) 63. Disrobed Before Act
( ) 64. Removed Clothing During Act
( ) 65. Took Vict Clothing / Items
( ) 70. Other (specify in narrative)
( ) 80. Not Applicable
( ) 90. Unknown

### ALARM SYSTEM
( ) Yes  ( ) No

Type

### METHOD OF ATTACK ON PROPERTY
( ) A. Hid in Building
( ) B. Alarm Disabled / Inop
( ) C. Trip Alarm / Return Later
( ) D. Hid Property / Returned Later
( ) E. Bldg Abandoned / Under Construct
( ) F. Attacked Doorknob
( ) G. Attacked Hinges
( ) H. Attacked Padlock / Hasp
( ) I. Broke/Cut Window
( ) J. Removed / Cut Screen
( ) K. Removed Air Conditioner
( ) L. Cut Hole in Wall
( ) M. Smoke / Ate / Drank on Premises
( ) N. Obscene Writing
( ) O. Ransacked
( ) P. Vandalized
( ) Q. Technical Skill Used
( ) R. Tidy
( ) S. Used Gloves
( ) T. Used Matched for Light
( ) U. Used Victim's Tools
( ) V. Left Tools at Scene
( ) W. Multiple Subs Indicated
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### WEAPON TYPE
( ) A. Handgun
( ) B. Automatic
( ) C. Revolver
( ) D. Derringer
( ) E. Rifle
( ) F. Shotgun
( ) G. Machine Gun
( ) H. Pellet / BB Gun
( ) I. Blued Steel
( ) J. Chrome / Nickel / Stainless Steel
( ) K. Razor
( ) L. Knife
( ) M. Ice Pick
( ) N. Sword / Dagger
( ) O. Club / Stick
( ) P. Crowbar / Tire Iron
( ) Q. Rope / Belt / Chain
( ) R. Bottle
( ) S. Brick / Rock
( ) T. Explosives
( ) U. Gas / Poison / Drugs / Chemicals
( ) V. Hands / Feet
( ) W. Simulated Weapon
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### USE OF WEAPON
( ) A. Cut / Stabbed
( ) B. Hit / Struck
( ) C. Strangled / Tied
( ) D. Thrown
( ) E. Shot
( ) F. Threatened Use
( ) G. Impeded / Ingested
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### METHOD OF DEPARTURE
( ) A. Walked/Ran
( ) B. Swam
( ) C. Bicycle
( ) D. Motorcycle
( ) E. Car
( ) F. Truck
( ) G. Other Motor Vehicle
( ) V. Boat
( ) G. Plane
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### DEMEANOR OF SUSPECT
( ) A. Angry
( ) B. Violent
( ) C. Disorganized
( ) D. Nervous
( ) E. Irrational
( ) F. Disoriented / Bewildered
( ) G. Apologetic
( ) G. Calm / Professional
( ) G. Polite
( ) G. Reserved
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

### EVIDENCE COLLECTED
( ) A. Fingerprints
( ) B. Other Prints
( ) C. Blood
( ) D. Semen
( ) E. Hair
( ) F. Skin
( ) G. Clothing
( ) H. Jewelry
( ) I. Weapon
( ) J. Bullets
( ) K. Tool
( ) L. Vehicle
( ) M. Composite
( ) N. Photographs
( ) O. Money
( ) P. Drugs / Paraphernalia
( ) Q. Paper / Note / Letter / Check / etc.
( ) R. Writing Instrument / Ink
( ) S. Chemical Agent
( ) T. Incendiary Device
( ) U. Paint
( ) V. Dirt / Foliage
( ) W. Stolen Property
( ) X. Other (specify in narrative)
( ) Y. Not Applicable
( ) Z. Unknown

**NARRATIVE**

SEE CONTINUATION PAGE.

### ADMINISTRATIVE

| Officer(s) Reporting | ID Numbers/Radio Number | Unit | Date |
|---|---|---|---|
| | 7352 / 314 | 03 | 09-17-00 |

| Officer Reviewing (if Applicable) | ID Number | Routed To | Referred To | Assigned To | By | Date |
|---|---|---|---|---|---|---|
| | 27.6 /?? | | | | | 09/?/?? |

Case Status — Clearance Type: 1 Arrest, 3 Unfounded, 2 Exceptional, 4 Open Pend — A-Adult / J-Juvenile

Exception type: 1 Extradition Declined, 2 Arrest on Primary Offense Secondary Offense Without Prosecution, 3 Death of Offender, 4 V/W Refused to Cooperate, 6 Juvenile / No Custody

M E H O D O F A T T A C K

| | | 1. Offense | | Juvenile | | 1 Original | | Page |
|---|---|---|---|---|---|---|---|---|
| | | 2. Arrest | | | | 2 Supplement | | 5 of 5 |
| | | 3. Statement | | | | | | |

**ADM**

FLO 4 4 0 0 0 0 — Agency ORI Number

Agency Name: OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA

Agency Report Number: 88 37 4 3 6 8

Original Date Reported: 09 17 00

Case Reference: NCFA Drowning

**NARRATIVE CONTINUATION**

On 09-17-00 at 1208hrs I arrived at 1005 Hialeah Lane regarding a medical emergency. The call was dispatched as a female that had fallen and was pinned between a dock and vessel not breathing and no pulse. On my arrival the female was out of the water on the concrete dock and rescue breathing was in progress. The ambulance crew arrived as I did and they took over treatment.

The victim, Theon DeBernardis, and her brother in law, Franklin DeBernardis, were at home and Theon was doing work on their vessel. The residence is a ground level home on a canal with a concrete dock in the rear that is lowered to the water level. Theon was not wearing shoes and as she stepped from the dock to the vessel she slipped and fell into the water. It is unknown if she hit her head on anything or not but she was unconscious in the water. Franklin (who is mentally disabled) witnessed this and began shouting for help and trying to pull Theon from the water. Franklin's actions alerted two neighbors across the canal and both responded to assist Franklin.

Mr. Ron Watson arrived to Franklin's aid first, by vessel, and assisted him in pulling Theon from the canal and getting her on the dock. Mr. Craig Kirsch then arrived from across the canal and began rescue breathing until the arrival of myself and EMS. At last report, Theon had begun breathing on her own and had a pulse and was being admitted to the intensive care unit at Mariners' Hospital.

At the time of the accident Theon was the sole caretaker of Franklin. I contacted Anne Cohan with the Monroe Association for Retarded Citizens. She was familiar with Franklin and facilitated the temporary care of him.

Present at the residence were 4 dogs, 5 cats and 12 ferrets. Monroe County Animal Control was contacted and they responded to take custody of the animals.

Mr. David DeBernardis, husband of Theon DeBernardis and brother to Franklin DeBernardis, is currently incarcerated and being held at the Federal Detention Center in Miami, Fl. I spoke to an officer at the detention center regarding notification to Mr. DeBernardis. The officer I spoke to said it is their protocol to notify the inmate themselves in situations such as this so I relayed the particulars to him along with the phone numbers to Mariner's Hospital and Monroe Association of Retarded Citizens. No further.

**ADMINISTRATIVE**

Report Contains:

Related Report Number(s):

Officer(s) Reporting: ___

I.D. Number: 7357 3 4 — Unit: C3 — Date: 09.17.00

Officer Reviewing (If Applicable): ___

I.D. Number: 2716/371 — Routed To: CEu — Referred To: ___ — Assigned To: ___ — By: ___ — Date: 09/17/00

| Case Status | Clearance Type | A-Adult | Date Cleared | Arrest Number | Number Arrested |
|---|---|---|---|---|---|
| | 1 Arrest / 2 Exceptional / 3 Unfounded | A-Adult / J-Juvenile | | | |

Exception Type: 1. Extradition Declined / 2. Arrest on Primary Offense Secondary Offense Without Prosecution / 3 Death of Offender / 4 V/W Refused to / 5 Prosecution Declined / 6 Juvenile No Custody

OBTS Number:





RICHARD D. ROTH • SHERIFF OF MONROE COUNTY
5525 COLLEGE ROAD • KEY WEST, FLORIDA 33040
305  292-7000 • FAX (305) 292-7070 • 1-800-273-COPS

September 26, 2000

To whom it may concern.

I have known David Debernardis and his family for approximately four years on a personal and professional level.

As a Detective with the Monroe County Sheriff's Office, I have worked closely with him as the Crime Watch Coordinator in Key Largo, Florida. While acting as the Crime Watch Coordinator, David and his wife were always committed to the community. David has contributed information on criminal activities such as suspected drug houses and "areas of concern" on a regular basis.

He is also actively involved in the Upper Keys Search and Rescue that he and his late wife, Theon, started. Through their efforts, they have been able to acquire a Search and Rescue vessel and two German Shepherds. David has spent countless hours on this project promoting boating safety.

David has also been involved with the United States Coast Guard Auxiliary. Again, another example of his and his late wife's devotion to their community.

Unfortunately, David's wife passed away while he was awaiting bond on this case. She fell while untiing the Search and Rescue boat to go assist someone in distress. This type of unselfish commitment to the community is the same David has shown.

As long as I have known David, he has dedicated his time to make positive changes by unselfishly giving his time to his community and asked for nothing in return.

I would like to thank you in advance for taking the time to read this letter about David. As a Law Enforcement Officer, I have observed countless people commit crimes and never learn from their mistakes. In my opinion, David is not one of those people.

Sincerely,

*David P. Carey*

Detective David P. Carey



DEFENDANT'S
EXHIBIT
2

Patricia A. Holcombe
222 Coral Road
Islamorada, FL   33036


November 17, 2000


Judge W. Ferguson


Re:  Mr. David DeBernardis

This letter is written in heartfelt concern for the above
individual.  I have personally known Mr. DeBernardis for
approximately seven years.  He has been an outstanding
citizen in the community all this time.  He has volunteered
countless hours over the years for the Coast Guard Auxillary
in the Islamorada area.  Mr. and Mrs. DeBernardis have single-
handedly started the Upper Keys Search and Rescue.  Over these
past few years, they have volunteered their time and expertise
in the assistance of helping individuals in distress in the
waters.  They also have assisted local officials in traffic con-
trol, etc. when the need has arisen, involving the numerous
accidents occurring on our highways.  And, not to be excluded,
is the involvement that Mr. and Mrs. DeBernardis played in the
Neighborhood Crime Watch in the Key Largo area.

Franklin DeBernardis, his brother, is disabled.  He has Down
Syndrome and is in the sole care of his brother.  Recently,
they have lost two very close relatives in the family.  David's
wife and their father both passed away within the span of the
last five months.  Separation at this point, could be detrimen-
tal for the two brothers.  I fear the consequences.

Please take this into consideration when determining your deci-
sion concerning Mr. DeBernardis.  He is a good man who made
an unfortunate error.  Thank you for allowing my comments to be
submitted for your review.

Sincerely,

Patricia A. Holcombe

Patricia A. Holcombe
/pah

DEFENDANT'S
EXHIBIT
3

**UPPER KEYS
VOLUNTEER
SEARCH & RESCUE**



David & Theon DeBernardis          Tel: 451-3347
P.O. Box 137                       Mobile: 394-6685
Key Largo, FL 33037                Channel 16 VHF

DEFENDANT'S
EXHIBIT
4

**NEWS**

Wednesday, April 22, 1998

# Marine rescue group forms in Key Largo

*Capable mariners,*
*rescuers team up,*
*organizers say*

By KEVIN WADLOW
Keynoter Staff Writer

"We can cover from Key Largo to Lower Matecumbe and farther if necessary," DeBernardis said. "We'll go anywhere. If we save one or two lives, it will all be worthwhile."

Upper Keys Volunteer Search and Rescue's first major project will establishing a system where people can call to file float plans — information on where they plan to go boating and

when they plan to return.
If boaters don't check in within an hour or so of their expected return, said DeBernardis, search efforts can begin and the Coast Guard noti-

... details on organizing float ... with-
... ... information
... on Upper Keys Volunteer
Search and Rescue, call 451-
3343.

---

Seattle and attended Washington State University.

She is survived by her husband, David DeBernardis; and two daughters, Theon, 23, and Jamie, 21.

She was predeceased by her father, Oscar Alfred Halbakken, and her mother Eunice Merle Nelson.

The DeBernardis' founded the Upper Keys Volunteer Search and Rescue in 1977.

No services have been scheduled. In lieu of flowers, donations for a burial fund can be sent to the Beyer Funeral Home or the Upper Keys

Search and Rescue P.O. Box 137, Key Largo 33037.

---

**THEON DEBERNARDIS**

Theon DeBernardis of Key Largo died Thursday, Sept. 21.

Mrs. DeBernardis, 50, was tying up her boat when she slipped and fell. She hit her head on a dock, fell into the water and drowned.

Mrs. DeBernardis grew up in

DEFENDANT'S EXHIBIT 5

# Volunteering for Search and Rescues on the Water

**By JILL ZIMA**
*Staff Writer*

A new search and rescue squad is looking for volunteers who have free time and will assist in all types of emergency situations on the water.

According to organizer David DeBernardis of Key Largo, search and rescue means to assist people and property in all ways in potential or actual distress or danger. The U.S. Coast Guard Auxiliary, Florida Marine Patrol, fire and rescue squads can't handle all the emergencies out there, he said, so this volunteer corps of paramedics and first response personnel will also be available 24 hours a day, seven days a week, responding to notifications from beepers and cellular phones.

"We can fully screen volunteers," he added.

"With all the boats we have on the water these days, between overdue boats, accidents and emergencies that can happen, we will be working hand in hand with all the departments in Monroe County and give them a real helping hand," DeBernardis said. He plans to use his boat, *Thunder*,

in the line of duty.

DeBernardis is an active volunteer with many local organizations including Crimewatch along with his wife, Theon.

They saw a need for the search and rescue and emergency response service in their own "back yard" on Blackwater Sound.

"There are drunk drivers, boating and alcohol is a problem. One teen told me recently about a drunk cigarette boat driver he saw while he was out on the water, the teen was scared and turned his boat away around and came home."

First responders receive 48 hours of training through the American Red Cross with periodic updates of training skills.

This assistance is without cost to the county; a non-profit organization is in the midst of being formed, DeBernardis said.

For more information, call DeBernardis at 451-3347.

An offshore rescue partnership already works with the Monroe County Sheriff's Office and marine rescue teams are available currently through the local volunteer fire department. But DeBernardis thinks there is room for more volunteers doing Good Samaritan work out on the water.

DEFENDANT'S EXHIBIT 6



LEFT: Debera Stone of Massachusetts personalizes paints nautical scenes in latex paint on pine boards, then polyurethanes them. The plaques can be used for houses or boats. RIGHT: Theon and David Bernardis showed off their new search-and-rescue dogs at the jubilee. Both animals are pure-bred German shepherds about half way through their training. Lightning, with Theon, is 7 months old. Midnight, with David, is 8 months old. The dogs can search for people on the water or on land. They work with all branches of law enforcement and spend more than 170 hours working during Hurricane Georges and Tropical Storm Mitch.

*Photos by Jackie Harder*

As more boats on Upper Keys waterways make the chance of a nautical mishap more likely, a group of volunteers wants to provide more safety.

"Monroe County has been rated No. 1 in boating accidents since 1996," said David DeBernardis of Key Largo. "Every year the accidents keep going up, and more boats keep coming down. It gets more congested every day."

The newly formed Upper Keys Volunteer Search and Rescue has attracted a founding group of about 30 capable mariners and rescue professionals, said DeBernadis.

"We want to assist in any way possible," he said. "In all kinds of emergencies on the water, we can get there with trained people to help.

A retired chef, DeBernardis and wife, Theon, often volunteer to cook for the crew of the Islamorada Coast Guard Station. There they see first-hand the extent of the waterfront problems and at times, the unfortunate results.

"Our marine agencies all do a great job, but there's just not enough of them," DeBerardis said. "We don't want to step on anyone's toes. We just want to help make our waters safer and save a few lives."

The October 1997 death of high-school teacher Eric Wolfe, who was struck by a boat while snorkeling, spurred them into action.

"People were giddy about the idea," DeBernardis said. "Everybody said, 'It's about time; this is needed here.'"

Among the early volunteers are Monroe County Sheriff's Office Deputy Art Ortolani; Miami Beach Fire Chief Tom Thomason; professional captain Brian Zarcone, and other licensed emergency medical technicians, paramedics, rescue divers and marine mechanics.

"This is a trained and licensed group that can provide a high quality of rapid response," DeBernardis said. "In emergencies slight or severe, these people can dive in and make a rescue. When somebody's hurt, we can supply medical assistance."

The group is working to outfit its first response boat, the 23-foot *Thunder,* with medical gear and lights.

Eventually, they envision three boats stationed on the oceanside of the Upper Keys, and three more on the bayside. Boats will spend a lot of time

DEFENDANT'S EXHIBIT 7

for saying "I saw it in the Free Press"                              May 27-June 2, 1998

# Volunteer search and rescue group formed

### By HARLEN BROWN
*Free Press Staff Writer*

KEY LARGO — The untimely death of Eric Wolfe, 28-year-old teacher and assistant baseball coach at Coral Shores High School, had a profound effect on many people in the Upper Keys community.

One such person was David DeBernardis, who not only became concerned over the unfortunate accident but decided there was something he could do that might save the next diver or person injured in a boating accident.

He came up with a name, the Upper Keys Volunteer Search and Rescue.

With an organization of two, he and his wife, Theon, DeBernardis started to spread the word, seeking a couple of boats, and other volunteers to step forward and give them a hand.

"We put an ad in a local newspaper and the response was 'outrageous,'" DeBernardis said. "We got a lot of calls and within a short time the membership had grown to 30 and we had two boats being prepared to serve the organization."

A Jeep that DeBernardis owns was lettered with the organization's name and telephone number.

Donations and contributions have come in to outfit the boats, and DeBernardis expects to be on the water ready to go within a couple of weeks.

"We have been working closely with the U.S. Coast Guard, the Florida Marine Patrol, Monroe County Sheriff.s Department, and all other law enforcement agencies to make them aware of our existence



*Harlen Brown photo*
**Theon and David DeBernardis with the Upper Keys Volunteer Search and Rescue Jeep and one of the rescue boats being prepped for rescue operations in the Florida Bay.**

and what we are prepared to do," DeBernardis said.

Off the top of his head, DeBernardis quoted statistics he has gathered on boating accidents.

He spoke about how in 1996 Monroe County was given the dubious title of number one in boating accidents in Florida and has kept it ever since.

"That year there were 18,106 registered boats in the Keys — 174 accidents, three fatals, and 88 serious injuries," he said. "Damages to vessels was $543,494, and those figures have grown each year since. Now with all the Jet Skiers out there and uneducated drivers it's going to get worse. We have to do something."

Initially UKSR will have two boats in the water. One oceanside, the other bayside.

"If an emergency exists, say an injured person, a drowning, a boat sinking, a diver in trouble, whatever, we will have a boat waiting to go out and assist," he said. "Denise Eberle, a medical advisor and EMT paramedic, said we will be in contact with the authorities and when we have the location we'll put together emergency response people, EMTs or divers, and set up a meeting place so the Upper Keys Search and Rescue will be able to meet and transport medical personnel to the scene of an accident or injury.

"Presently the EMTs have been able to go to a location where an injured person may be coming in

*(Continued on Next Page)*



DEFENDANT'S EXHIBIT
8

May 27-June 2, 1998

Thank you for saying "I saw it in the Free Press"

# Rescue

*(Continued from Previous Page)*

and await their arrival. By getting them out to the injured person we can save time and maybe save lives," DeBernardis said.

Eberle said she is in the process of contacting Reggie Paros, with the Monroe County Emergency Medical Services, to coordinate the search and rescue operation and get their assistance.

DeBernardis said the two boats they have are a 15-foot Thunderbird with a 115-hp engine, and a 23-foot Bertram with a rebuilt 350 I/O.

"The black and white Bertram is named 'Thunder' and is a well-known boat in these waters," DeBernardis said.

Both boats will carry first aid equipment and be outfitted with emergency flashing lights.

The board of directors of the UKSR is headed by DeBernardis as president, his wife Theon as secretary, Judy Owen Brock as treasurer, Russell Cullen as the attorney, and medical advisors Eberle and Terry Lynn DeAngelis.

Other board members are Art DeYork, who heads up the Special Olympics in the Keys; Tom Thomason, Miami Beach Fire Chief; John Gustafson, Bryan Zarcone and Art Ortolani with the Monroe County Sheriff's Office.

The boats will be ready to go at all times with volunteers standing by

and on call via a pager network.

Each volunteer will have special first-aid training and will be expected to complete the American Red Cross First Responder Course, DeBernardis noted.

"We are also beginning another service for boaters called a Float Plan. Boaters will be charged a $50 a year fee and fill out a form that will include all the pertinent details about their emergency contacts, their boat and other vital information," he said. "They will then be given a personal identification number for their vessel.

"Any time they go out on the water, and it doesn't matter how many times they use it during the year, they call in their PIN and tell us what time they are leaving, from where, their destination and time of return," DeBernardis said. "When they return they are to call us back. If we don't hear from them within a 30-minute period of their estimated time of return, we begin calling them.

"Once we have exhausted our efforts to locate them, we then contact the Coast Guard and report them overdue and give them all the information we have available. We would also join in the search and rescue operation, if needed," DeBernardis said.

Eventually they plan to have four boats in the water. Two in the Upper Keys and two in the area around Islamorada.

"We already have the permission

of the Coast Guard to dock one of our vessels at their station in Islamorada," DeBernardis said.

They are still looking for more volunteers, donations and a couple of boats. The next meeting of the UKSR is scheduled for 7:30 p.m.

June 4 at the meeting room in Mariners Hospital. The meeting is open to the public.

Their address is Upper Keys Volunteer Search and Rescue, P.O. Box 137, Key Largo, FL. and the phone number is 451-3347.



Harlen Brown photo

**David DeBernardis, president of the Upper Keys Volunteer Search and Rescue, stands on the bow of 'Thunder,' a 23-foot Bertram undergoing an engine change.**

# DEPARTMENT OF TRANSPORTATION



## United States Coast Guard

### AUXILIARY CERTIFICATE OF ADVANCEMENT

*This is to certify that* ___DAVID A. DE BERNARDIS, 0701308382___ *has satisfactorily completed all requirements and is designated*

## *Private Aids To Navigation Verifier*

*in the Coast Guard Auxiliary.*

_____, Director of Auxiliary

__7th__ Coast Guard District

_____ __July 25__ _____, 19 __96__

[SEAL]

DEPT. OF TRANSP., USCG, CG-2836 (REV. 10-73)

GPO 958-812

DEFENDANT'S EXHIBIT
9



**Sheriff**

RICHARD D. ROTH • SHERIFF OF MONROE COUNTY
5525 COLLEGE ROAD • KEY WEST, FLORIDA 33040
(305) 296-2424 • FAX (305) 292-7070 • 1-800-273-COPS

March 14, 2001

The Honorable Wilkie D. Ferguson
United States District Judge
299 East Broward Boulevard, Room 207B
Fort Lauderdale, Florida 33301

Dear Judge Ferguson:

The purpose of this letter is to inform you that Mr. David DeBernardis performed as Crime Watch Chairman in the Sexton Cove neighborhood of Key Largo for the past several years. His duties consisted primarily of acting as the volunteer eyes and ears of the Monroe County Sheriff's Office and reporting any suspicious persons, vehicles or activities in his neighborhood.

I always found him to be a courteous, cooperative person with a "can do" attitude, who seemed well liked by residents of his neighborhood.

If you need any further information that I'm capable of providing, please contact me at (305) 292-7116.

Sincerely,

Deputy Emil LaVache
Neighborhood Crime Watch Coordinator
Monroe County Sheriff's Office

Freeman Station
2585 Overseas Highway
Tavlia Key, Florida 33035
(305) 743-6154 • FAX (305) 745-4564

Marathon Station
3103 Overseas Highway
Marathon, Florida 33050
(305) 289-5410 • FAX (305) 289-2497

Islamorada Substation
87600 Overseas Highway
Islamorada, Florida 33036

Spottswood Sta
98750 Oversea
Islamorada, Florida
(305) 852-1511

DEFENDANT'S
EXHIBIT
10

Wednesday, November 15, 2000

From the Desk of:   **Toni Withers**

# MEMO



To:   Honorable Wilke Ferguson, Federal Judge
Cc:   Attorney Daryl Wilcox
Re:   David DeBernardis

Honorable Judge Ferguson:

This note is to inform you that I have personally known Mr. & Mrs. DeBernardis since approximately April of 2000. We met after David phoned me to ask if I would donate a German-Shepherd puppy to their organization: Upper Keys Volunteer Search & Rescue. I did, in fact, donate two puppies to their organization. Since then, I have had regular contact with the puppies and Mr. & Mrs. DeBernardis. They have phoned me daily with progress reports on the puppies while seeking my guidance with training and upbringing. I have on several occasions visited the DeBernardis' in their home to help them with the education of their search and rescue dogs.

Having been in close contact with David for these last 7 months, I perceive David to be a good-hearted person who contributes enthusiastically to his community through his volunteer search & rescue work. His love for his animals and his cause is unmistakable and has given him a noble sense of purpose for his life.

However, it is also clear to me that David's general comprehension level and perceptive abilities are limited, at best. It is my firm belief that he did not realize, *or even consider,* consequences when he went to purchase a rifle for his wife's birthday. He only wanted to make her happy by buying her a present and thus, his focus was *only* on the gift. I am certain he did not pay attention to the paperwork required for the transaction. Most likely, he did not even read it, considering it a mere formality.

I am no psychiatrist, but David's lack of comprehensive ability was abundantly clear to me within a very short period of meeting him. This knowledge *prompted me* to offer my guidance in the upbringing of the puppies.

Dear Judge Wilke: Although I am not an attorney, I simply fail to see how justice can be served by jailing David for his congenital disadvantage.

Respectfully,
H. Toni Withers



DEFENDANT'S
EXHIBIT
11

# PSYCHOLOGICAL ASSOCIATES OF MIAMI, INC.
## DR. LEONARD HABER, P.A.

2125 Biscayne Boulevard • Suite 200 • Miami, Florida 33137-5029
Telephone: (305) 573-7373 • Facsimile: (305) 576-9700 • E-mail: LHaberPhD@aol.com

---

### PSYCHOLOGICAL EVALUATION REPORT
#### PRIVILEGED AND CONFIDENTIAL

January 2, 2001

Lurana S. Snow
United States Magistrate Judge
300 N.E. 1ˢᵗ Avenue
Miami, Fl 33132

> **Re:   DEBERNARDIS, David**
> **CC#   00-6264-CR-Ferguson/Snow**
> **DOB: 2/15/51 - 49 y/o**

### REFERRAL DATA:

Mr. David Debernardis was referred to this examiner for psychological evaluation pursuant to a Court Order issued by U.S. Judge Lurana S. Snow to determine competency to proceed to trial relative to Making A False Statement To A Licensed Firearm Dealer charges filed against him on September 12, 2000. Mr. Debernardis was evaluated at the Psychological Associates of Miami's office on January 2, 2001.

### EXAMINATION PROCEDURE:

Psychological Interview
Mental Status Examination
Bender Gestalt Visual Motor Test (BGVMT)
Bender Gestalt Recall Test (BGRT)
Minnesota Multiphasic Personality Inventory – Second Edition (MMPI-2)
Thematic Apperception Test (TAT)
Projective Drawings
Competency Evaluation



DEFENDANT'S
EXHIBIT
12

:r-06242-KAM    Document 26    Entered on FLSD Docket 03/16/2001    Pa



**Dr. Leonard Haber**
Psychological Evaluation Report

**Debernardis, David**
Page 2 of 4
Judge L. Snow

### PRESENTATION:

Mr. Debernardis is a 49-year old Caucasian male who appeared his stated age. He entered the examining situation willingly. He correctly identified the examining date and his location. He reported use of medication for "depression, heart murmur and high blood pressure" but reported that he doesn't remember their names. He reported a history of seizures "all my life...since I was born" and a series of episodes of unconsciousness. He reported no history of serious accidents. He presented as oriented, flat, slightly slow, mildly depressed and mildly irritated.

### PERSONAL HISTORY:

Mr. Debernardis reported that he was born in Brooklyn, New York on February 15, 1951 as the youngest child in a sibship of two brothers. He reported himself to be a widower and to have no children. He reported a 12th grade education from Carol City Senior High School and an additional culinary academic education from New York. He reported being disabled for about 30 years and to receive SSI benefits in the amount of $365.00 per month. At the time of his arrest, Mr. Debernardis was reportedly living at 1005 Hialeah Lane, Key Largo, Florida for a period of ten years. He reported that he does volunteer work for the Coast Guard, Search & Rescue and crime watch in the upper keys. He reported no history of military service.

Mr. Debernardis reported a recent psychiatric treatment "since wife died in September 2000.". He reported a strong history of several arrests and jail time. He reported no use of drugs or alcohol. He may not be entirely forthcoming in that regard.

### EXAMINATION RESULTS:

Mr. Debernardis was cooperative with this examiner and maintained a pleasant but tense, sad and edgy demeanor during the evaluation. Eye contact was aversive. Mood and affect were flat and tense. Speech was coherent. He was oriented to time, place and person. He demonstrated adequate memory for recent and remote events. He demonstrated thought processes that were productive, goal oriented and without significant evidence of tangential or circumstantial reasoning. There was no significant evidence of loosening of associations or ideas of reference. His fund of general information was poor.

Mr. Debernardis reported no significant paranoid, suicidal or homicidal ideations, or delusions. When asked if he has any hallucinations, Mr. Debernardis replied, "I see my wife but that's normal." He reported severe depressive symptoms since his wife's passing. He reported sleep and appetite disturbance and recent significant weight fluctuations.

Mr. Debernardis's responses to the test questions on the Minnesota Multiphasic Personality Inventory (MMPI-2) reflected a valid profile of a person who is depressed, physically debilitated and with difficulty gaining perspective or thinking clearly.

**Dr. Leonard Haber**
Psychological Evaluation Report

**Debernardis, David**
Page 3 of 4
Judge L. Snow

Results of the Bender Gestalt Visual Motor Test (BGVMT) and Bender Gestalt Recall Test (BGRT) show that Mr. Debernardis did not distort or collide test figures, but his test protocol resembles those of people with organic brain dysfunction that may be related to his history of seizures.

House, Tree, Person (HTP) drawings are ghostly in quality and reflect a feeling of not being all there. Thematic Apperception Test (TAT) themes mostly reflect problems, morbidity and depression.

## COMPETENCY:

Mr. Debernardis reported his charges to be "they say falsifying a statement." When asked if the charges were serious Mr. Debernardis replied "they are treating me like I'm a drug cartel or something." This examiner asked Mr. Debernardis the meaning of his remark and he replied "yeah but they are acting like there's a big crime here...it's nothing...they do not care about a person's family...all they care about is their little cage." *Mr. Debernardis is upset about being prosecuted but his appreciation of the charges filed against him and their seriousness was rated as acceptable.*

Mr. Debernardis said that if convicted of such charges, a person could "get four years...I'm trying to get a downward departure. If I do go to prison I will not make it. I will have a heart attack or nervous breakdown. Also I will lose my house...I'll be on the streets. I'm not a criminal. I have people that can speak up for me." *His appreciation of the range and nature of possible penalties was rated as acceptable.*

Mr. Debernardis correctly identified the function of each key member of the judicial system. *His understanding of the adversary nature of the legal process was rated as acceptable.* Mr. Debernardis was able to give this examiner an account of the events leading up to his arrest. *His capacity to disclose to his attorney pertinent facts surrounding the alleged offense was rated as acceptable.* Mr. Debernardis presented as slightly slow, mildly depressed, mildly irritated and flat but oriented, responsive and cooperative. He will likely exhibit similar demeanor in a Court setting. *His capacity to manifest appropriate Courtroom behavior and testify relevantly was rated as acceptable.*

## CONCLUSION:

Based upon examination results and available information, Mr. Debernardis presented as tense, anxious, nervous, and depressed and with a recent trauma history including the loss of his wife, father and mother. He is the sole caretaker of his younger brother who has Down Syndrome. Mr. Debernardis himself has a history of seizures since birth. He reports a recent lawful and helpful history to his community. He reported he has been a volunteer to Search and Rescue, Crime Watch and helping elderly, poor and homeless since he was released from prison. Incarceration would lead to loss of home and inability to continue the life long care of his only brother who has Down Syndrome. He has extreme hardship. He claimed he did not know what he did was wrong when he did it. He knows it now. He appeared depressed but alert and oriented. His insight and judgment are not the best. His attitude is one of remorse. He is mentally distraught but technically competent. He needs continued psychiatric treatment and supervision.

**Dr. Leonard Haber**
Psychological Evaluation Report

**Debernardis**, David
Page 4 of 4
Judge L. Snow

Mr. Debernardis' history of mild mental impairment (disabled for the past 30 years) as well as the significant trauma and hardship he has suffered, and his current presentation qualify him as a candidate for consideration for Downward Departure.

Thank you for the opportunity to examine this interesting person and to be of service to the Court. If there is any other way in which I can be of assistance, please do not hesitate to call on me.

Leonard Haber, Ph.D.
Licensed Psychologist
Florida License Number 2257
New York License Number 2756 (Inactive)

I, Dr. Leonard Haber, certify that I personally conducted and/or prepared this report and all conclusions reflected are those of this expert and not those of any third party; I further certify that the preparation of this evaluation was performed consistent with Chapter 490, Florida Statutes as well as with rules and regulations promulgated pursuant thereto.